NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE JESUS C.

No. 1 CA-JV 18-0321
FILED 5-9-2019

---

Appeal from the Superior Court in Maricopa County
No.  JV601433
The Honorable Veronica W. Brame, Judge *Pro Tempore*

**AFFIRMED AS MODIFIED**

---

COUNSEL

Law Offices of Kevin Breger, Scottsdale
By Kevin Breger
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Amanda M. Parker
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge James P. Beene joined.

---

**C A T T A N I**, Judge:

¶1      Jesus C. appeals from the $102,259.91 restitution order entered after Jesus was adjudicated delinquent for the offense of criminal damage. The State concedes error as to $8,688.52 of the award. Accordingly, and for reasons that follow, we modify the restitution order to reflect a corrected award of $93,571.39, but in all other respects we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2      On May 1, 2017, Jesus and a few other juveniles broke onto the corporate victim's property and drove a backhoe into a dump truck. Jesus later pleaded delinquent to one count of criminal damage, with restitution capped at $120,000.[1]

¶3      At the restitution hearing, a representative of the victim testified about the costs incurred as a result of the offense. She explained that the damaged dump truck was a rental, and the rental company had demanded $93,571.39 for the loss. Although the victim had disputed the amount of the rental company's demand based on a significantly lower preliminary repair estimate, the rental company had determined the dump truck was totaled (and reported that no vendor would perform repairs "due to the extensive damage"), so the demand was based on the truck's replacement value ($77,500.00), plus three months' lost use for May, June, and July 2017 ($6,516.39) and associated expenses. Despite some initial ambiguity about whether the victim would be entitled to keep the dump truck after paying for its replacement, the representative clarified that the rental company (not the victim) retained possession and ownership of the truck.

---

[1]      As part of the plea agreement, the State also dismissed one count of criminal trespass committed on a different occasion against a different victim, and Jesus agreed to pay a specified amount of restitution to the victim of that offense. That portion of the case is not at issue on appeal.

¶4 Despite the victim's opposition, the rental company's demand for $93,571.39 remained unchanged from the initial letter in July 2017 through the time of the restitution hearing in August 2018. Because the victim's insurance company had denied coverage, the victim owed the full amount. The victim representative further testified that the rental company had continued to charge (and the victim continued to pay) monthly rental charges for the dump truck ($2,172.13 per month) through July 2017. In all, the victim sought $102,259.91 in restitution: the $93,571.39 demanded plus $8,688.52 for four months' (April, May, June, July) separately invoiced rental charges.[2]

¶5 Jesus's father also testified at the restitution hearing. He described his experience repairing similar trucks and heavy equipment, and he estimated that the total repair cost should not exceed $10,000. He acknowledged, however, that he had not personally seen the damaged vehicle but rather had relied on photographs of the dump truck and the damage listed in a preliminary repair estimate.

¶6 The superior court ordered restitution to the victim in the full amount sought—$102,259.91—and further ordered that Jesus's father would be responsible for $10,000 of that amount. Jesus timely appealed.

## DISCUSSION

¶7 Once a juvenile is adjudicated delinquent, the superior court must, after considering the juvenile's age, mental and physical condition, and earning capacity as well as the nature of the offense, order the juvenile to make "full or partial restitution" to the victim of the offense. Ariz. Rev. Stat. ("A.R.S.") § 8-344(A); *see also* Ariz. Const. art. 2, § 2.1(A)(8) (granting crime victim a right "[t]o receive prompt restitution" from the perpetrator). The award of restitution provides the victim compensation for economic loss that would not have been incurred but for and was directly caused by the juvenile's delinquent conduct. *In re Andrew C.*, 215 Ariz. 366, 368, ¶ 9 (App. 2007) (citing *State v. Wilkinson*, 202 Ariz. 27, 29, ¶ 7 (2002)); *see also In re Erika V.*, 194 Ariz. 399, 400, ¶ 4 (App. 1999) (applying relevant legal principles of adult restitution to analysis of juvenile restitution).

---

[2] The victim's original restitution request included repair costs for two other pieces of equipment that were damaged on a different occasion. Because that damage was not attributable to the offense of which Jesus was adjudicated delinquent, those claims (totaling $1,353.16) were not included in the final restitution award.

**¶8**        The superior court has discretion to fashion an award, in light of the circumstances presented and proven by a preponderance of the evidence, in an amount sufficient "to make the victim whole." *In re Ryan A.*, 202 Ariz. 19, 24, ¶ 20 (App. 2002); *see also In re Stephanie B.*, 204 Ariz. 466, 470, ¶ 15 (App. 2003). The award should "restor[e] the victim to [the] economic status quo that existed before the crime occurred" without providing a windfall beyond the loss actually suffered. *Andrew C.*, 215 Ariz. at 368, ¶ 10 (citation omitted); *Ryan A.*, 202 Ariz. at 25, ¶ 27. The award may, however, include the victim's anticipated future costs (those the victim has not yet incurred by the date of the restitution hearing) if such costs are reasonably anticipated and result directly from the offense. *See State v. Howard*, 168 Ariz. 458, 460 (App. 1991).

**¶9**        Jesus does not dispute that the victim's loss was economic, would not have been incurred but for the offense, and was directly caused by his delinquent conduct. He argues instead that the amount of restitution awarded was excessive. We review the superior court's restitution order for an abuse of discretion and will uphold the award as long as it bears a "reasonable relationship" to the victim's loss. *Andrew C.*, 215 Ariz. at 367, ¶ 6; *Ryan A.*, 202 Ariz. at 24, ¶ 20.

**¶10**        Jesus first suggests that the superior court's restitution award was premature because the victim was challenging the rental company's demand. Because the court awarded as restitution the full $93,571.39 demanded, he suggests that the victim might receive a windfall if the victim were eventually successful in litigating or settling with the rental company for a lesser amount. But Jesus never asked the superior court to defer restitution until resolution of the dispute between the victim and the rental company, and in any event, such delay could undermine both Jesus's and the victim's interest in a speedy disposition. *See In re Alton D.*, 196 Ariz. 195, 197, ¶ 8 (2000).

**¶11**        Moreover, a restitution award can properly compensate a victim for "reasonably anticipated" future costs resulting from the offense. *Howard*, 168 Ariz. at 460. Here, although the victim had not yet paid the full $93,571.39 for the damage to the dump truck, the rental company also had not modified its $93,571.39 demand after its initial letter over one year before the restitution hearing. The victim representative acknowledged that, as of the time of the restitution hearing, the victim still owed the full amount. On this record, any potential favorable settlement between the victim and the rental company was purely speculative, and the superior court could properly conclude that the full $93,571.39 was a reasonably anticipated expense.

**¶12** Jesus next argues that the restitution award was excessive because it was based on the dump truck's replacement value ($77,500.00 of the $93,571.39 demanded by the rental company) instead of the truck's presumably lower fair market value. Fair market value at the time of the loss is generally—but not always—an appropriate metric for measuring loss, and the court may employ other measures "when fair market value will not make the victim whole." *State v. Ellis*, 172 Ariz. 549, 550 (App. 1992). "[R]ecovery should not be limited to fair market value when that measure is less than the actual economic loss." *In re William L.*, 211 Ariz. 236, 240, ¶ 16 (App. 2005). Because the victim did not own the dump truck, the cost to the victim is not the loss of the truck itself, but rather the victim's liability to the rental company directly created by the damage to the truck. And because the victim owed the rental company $93,571.39 based in part on the dump truck's replacement value, a lesser award would not make the victim whole.

**¶13** Jesus also contends that the superior court erred by failing to discount the restitution award to account for the salvage value of the dump truck. Ordinarily, the superior court can and should offset the salvage value of a damaged vehicle retained by the victim from its replacement value to avoid overcompensation. *Cf. Ryan A.*, 202 Ariz. at 25, ¶ 27. But here, the record supports a finding that the victim did not retain the truck and thus did not retain its salvage value. Despite one arguably ambiguous statement "[t]hat we're keeping the truck, yes," the victim representative later clarified that the rental company (not the victim) retained possession and ownership of the truck. Moreover, the rental company, which was not involved in the proceedings, continued to demand—and the victim remained liable to pay—full replacement value without an offset for the truck's salvage value.[3] Under these circumstances, the victim had an incentive to attempt to reduce the amount owed and in fact made such an attempt, and we will not impose a duty on the victim to do more—e.g., initiate litigation. *See State v. Reynolds*, 171 Ariz. 678, 682 (App. 1992) ("[C]oncepts such as 'failure to mitigate' or 'not commercially reasonable' simply do not fit into the [restitution] framework of the criminal law."). Accordingly, based on the unique facts of this case, the court did not err by declining to reduce the restitution award by the truck's salvage value.

**¶14** Beyond the $93,571.39 in restitution for the amount demanded by the rental company, however, the State concedes, and we agree, that the superior court erred by awarding the $8,688.52 in separately

---

[3] Whether Jesus might have a claim against the rental company for the salvage value of the truck is beyond the scope of this appeal.

invoiced rental charges for April, May, June, and July 2017. The April charge predated the offense and thus was not caused by Jesus's delinquent conduct. *See Andrew C.*, 215 Ariz. at 368, ¶ 9. And the May, June, and July charges were the same charges for lost use included in the rental company's demand letter; awarding restitution for the same charges twice would overcompensate the victim. *See Ryan A.*, 202 Ariz. at 25, ¶ 27. Accordingly, we modify the restitution order to subtract the excess amount and reflect a total award of $93,571.39.

¶15        Finally, Jesus asserts that the superior court erred by assessing $10,000 of the restitution award against his father. Under A.R.S. § 8-344(C), the court may order a delinquent juvenile's custodial parents to make a limited amount of restitution to the victim. The parents themselves (not just the juvenile) are entitled to due process in that regard, and the parents themselves may independently appeal that facet of the award. *See In re Kory L.*, 194 Ariz. 215, 217, 219, ¶¶ 3, 11 (App. 1999) (as amended). Although Jesus's father could have appealed from the restitution order, Jesus himself (who will have to pay less since his father is obligated to pay a portion of the award) is not "aggrieved" by that facet of the award as necessary to maintain an appeal. *See* A.R.S. § 8-235(A) (authorizing appeal by "[a]ny aggrieved party"); Ariz. R.P. Juv. Ct. 103(A) (same). Accordingly, we do not further address this argument.

## CONCLUSION

¶16        We affirm the restitution order as modified to reflect a corrected award of $93,571.39.



AMY M. WOOD • Clerk of the Court
FILED:   AA